United States District Court
Southern District of Texas
**ENTERED**
January 02, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALEX ROY; aka ALEX JOSEPH ROY, JR.; aka A.J. ROY; aka AL ROY, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 2:17-CV-9 |
| TANYA LAWSON, *et al*, | § § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO GRANT IN PART AND DENY IN PART
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Alex Roy is a Texas inmate appearing *pro se* and *in forma pauperis*. In this prisoner civil rights action, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Pending before the Court is a Motion for Summary Judgment filed by Defendants Isaac Kwarteng, Susanna Corbett, and Tanya Lawson. (D.E. 38). For the reasons stated herein, it is respectfully recommended that Defendants' summary judgment motion be granted in part and denied in part.

## I.    JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331. This case was referred to the undersigned United States Magistrate Judge for case management and to furnish a recommendation pursuant to 28 U.S.C. § 636.

## II.    PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is serving a ninety-five year sentence for aggravated robbery entered on April 21, 1988, in Dallas County, Texas.  His allegations in this case arise in connection with his current assignment to the McConnell Unit in Beeville, Texas.

On January 9, 2017, Plaintiff filed his original complaint, naming the following McConnell Unit individuals in their official capacities as defendants: (1) Tanya Lawson, Medical Practice Manager; (2). Dr. Isaac Kwarteng, Medical Director; and (3) Susanna Corbett, Physician Assistant (PA).  Plaintiff alleges that Defendants acted with deliberate indifference to his serious medical needs by denying him certain medical services and treatments which are necessary to cure his Hepatitis C condition.   Plaintiff seeks injunctive relief.

A *Spears*[1] hearing was conducted on February 21, 2017.   On that day, the undersigned ordered service of Plaintiff's original complaint and memorandum in support on Defendants.  (D.E. 12).  Defendants filed their answer on April 6, 2017.  (D.E. 13). Thereafter, on August 4, 2017, Defendants filed their Motion for Summary Judgment. (D.E. 38).   Plaintiff filed his response and objections to the summary judgment motion on August 21, 2017.  (D.E. 41).

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985)

### III.    SUMMARY JUDGMENT EVIDENCE

Defendants offer the following summary judgment evidence:

Tab 1:      Relevant Portions of Plaintiff's Medical Records (D.E. 38-1, pp. 2-40).

Tab 2:      Affidavit of Dr. Stephen Bowers (D.E. 38-1, pp. 41-44).

Tab 3:      Correctional Managed Health Care (CMHC) Policy B-14.13.3 ("Hepatitis C Policy") (D.E. 38-1, pp. 45-57).

Tab 4:      Relevant Portions of Plaintiff's Grievances (D.E. 38-1, pp. 58-60).

Tab 5:      Relevant Portions of Medical Practice Manager Lawson's Responses to Plaintiff's Interrogatories (D.E. 38-1, pp. 61-66).

 Tab 6:      Relevant Portions of Dr. Kwarteng's Responses to Plaintiff's Interrogatories (D.E. 38-1, pp. 67-71).

Tab 7:      Relevant Portions of PA Corbett's Responses to Plaintiff's Interrogatories (D.E. 38-1, pp. 72-77).

Plaintiff, in turn, offers the following summary judgment evidence:

Exh. A:      Public Verification/Physician Profile of Dr. Bowers (D.E. 41-1, pp. 9-10).

Exh. B:      CMHC Policy Manual – Table of Contents (D.E. 41-2, pp. 1-3).

Exh. C:      September 12, 2016 Letter regarding CMHC Policy 12.1 (D.E. 41-2, p. 4).

Plaintiff's verified complaint, attachments thereto, and testimony at the *Spears* hearing also serve as competent summary judgment evidence.  *See Garrett v. Davis*, No. 2:14-

CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017). Accordingly, the competent summary judgment evidence establishes the following:

### A. Plaintiff's Verified Complaint and *Spears* Hearing Testimony

Plaintiff was diagnosed with Hepatitis C on or about February 12, 2015. Plaintiff was fifty-one years old at the time of the diagnosis. Plaintiff first heard about the diagnosis from PA Corbett, who informed Plaintiff about receiving chronic care treatment for his Hepatitis C condition.

PA Corbett performed blood work on Plaintiff which included a determination of his AST/Platelet Ratio Index (APRI) as 0.5 in February, 2015. Plaintiff testified that, in accordance with the policy in effect in February, 2015, an APRI over 0.42 meant the patient was eligible for referral for treatment. Plaintiff testified that the treatment plan consisted of referral to another prison for a twelve-week program where Interferon, a drug costing $1,000/pill, is administered. According to Plaintiff, Interferon is 95% effective and works best when administered early. The TDCJ criteria regarding Hepatitis C was changed, effective April 14, 2016, raising the APRI threshold score for referral for treatment to 0.7. This change occurred after Plaintiff's grievance challenging the denial of referral for treatment was answered. Plaintiff's latest APRI score is 0.593. Nevertheless, Plaintiff continues to be denied treatment for his serious Hepatitis C condition, which could lead to liver cancer.

### B. Relevant Medical Care Evidence

The Hepatitis C Policy is set forth in the CMHC Infection Control Manual as Policy B-14.13-3 (Hepatitis C Policy). (D.E. 38-1, pp. 46-57). The Hepatitis C Policy

provides "guidance regarding the modes of transmission, screening, prevention, initial evaluation, clinical management, evaluation during treatment, housing, and work assignments of offenders with Hepatitis C (HCV)."  (D.E. 38-1, p. 46).  This policy states on the first page that it became effective April 14, 2016, replacing the old policy dated February 12, 2015.  (D.E. 38-1, p. 46).

Dr. Stevens Bowers, licensed by the Texas Medical Board and the current Legal Coordinator for the University of Texas Medical Branch Correctional Managed Care (UTMB/CMC), testified in his affidavit:

> UTMB-CMC policy requires that patients with a Hepatitis C Infection must be enrolled in the Chronic Care Clinic and seen at least once every 12 months.  Patients identified as currently Hepatitis C infected and enrolled in the Chronic Care Clinic may be discharged from the Chronic Care Clinic, if baseline transaminases and liver function tests are all within normal limits.
>
> An [APRI] score is assigned to Hepatitis patients using testing.  This score provides indication for signs or symptoms of liver disease as a result of Hepatitis C.  The APRI score is used to determine if the offender patient is a candidate for referral to a designated provider or clinic to be evaluated for possible treatment of Hepatitis C.  Patients with APR scores less than or equal to 0.7 do not require evaluation for possible treatment.

(D.E. 38-1, p. 42).  The Hepatitis C Policy specifically provides that "patients with APRI scores [less than or equal to] 0.7 generally do not require evaluation for possible treatment," but that the provider may consider the inmate-candidate for treatment based on other factors such as the history of the infection, clinical or laboratory evidence of a failing liver, or the presence of co-morbid conditions.  (D.E. 38-1, p. 49).  The provider

retains discretion in his clinical judgment whether a patient with an APRI lower than 0.7 should be referred for possible treatment.  (D.E. 38-1, p. 49).

On February 2, 2015, following a sick call request, Plaintiff was examined in the medical department for complaints of diarrhea and stomach cramps.  (D.E. 38-1, p. 4). Dr. Kwarteng, who was Plaintiff's treating physician, prescribed certain medications for Plaintiff.  (D.E. 38-1, pp. 5-6).     Dr. Kwarteng performed a physical examination on Plaintiff on February 11, 2015.  (D.E. 38-1, p. 7).  Because Plaintiff tested positive for Hepatitis C, Dr. Kwarteng ordered a series of labs, including a request to obtain Plaintiff's APRI score.  (D.E. 38-1, pp. 7-9).  Plaintiff's APRI score in February, 2015 was 0.5.  (D.E. 38-1, p. 42).  On February 11, 2015, Licensed Vocational Nurse (LVN) Michelle McGee notified the Office of Public Health about Plaintiff's Hepatitis C diagnosis.  (D.E. 38-1, p. 3).

On August 11, 2015, Plaintiff was treated by PA Corbett.  (D.E. 38-1, pp. 10-14). After noting Plaintiff's APRI score of 0.5 met "the criteria for referral for treatment," PA Corbett expressly directed Plaintiff to be scheduled at the Hepatitis Chronic Care Clinic (CCC) within 30 days.  (D.E. 38-1, pp. 14, 16, 19).   PA Corbett stated in her response to Plaintiff's Interrogatories, however, that the Hepatitis C referral criteria was updated in 2015 to require an APRI score of 0.7 and that, therefore, her referral recommendation on August 11, 2015 never occurred.  (D.E. 38-1, p. 74).

On December 11, 2015, PA Corbett completed an Individual Treatment Plan on behalf of Plaintiff.  (D.E. 38-1, pp. 22-29).  This plan noted Plaintiff's APRI score as 0.5. (D.E. 38-1, p. 23).  PA Corbett determined that Plaintiff's Hepatitis C did not meet the

criteria for further treatment at that time and directed Plaintiff to be scheduled at the CCC for Hepatitis C concerns in twelve months.  (D.E. 38-1, pp. 26, 29).

On August 19, 2016, PA Corbett examined Plaintiff and ordered lab work for Plaintiff to be taken before his next CCC appointment.  (D.E. 38-1, pp. 31-32, 43).  The lab work revealed Plaintiff's Hepatitis C condition to be stable and not requiring any treatment.  (D.E. 38-1, pp. 34, 43).  Dr. Kwarteng examined Plaintiff on August 22, 2016, at which time Plaintiff expressed his concerns about his Hepatitis C treatment plan.  (D.E. 38-1, pp. 33-34, 43).  Dr. Kwarteng informed Plaintiff that he did not meet the clinical criteria for referral for treatment because his APRI score was less than 0.7.  (D.E. 38-1, pp. 34, 42-43).

Plaintiff's APRI score was updated on January 13, 2016 to be 0.593.  (D.E. 38-1, p. 35).  On December 20, 2016, Dr. Kwarteng examined Plaintiff and prepared an Individualized Treatment Plan.  (D.E. 38-1, pp. 35-40).  Plaintiff's lab work was documented in this plan, including his APRI score of 0.593.  (D.E. 38-1, pp. 35-36).  Dr. Kwarteng ordered lab work for Plaintiff to be performed again in November, 2017.  (D.E. 38-1, p. 38).

### C. Plaintiff's Grievances

In his Step 1 grievance (Grievance No. 2016058284), dated December 13, 2015, Plaintiff complained about not satisfying the Hepatitis C criteria for referral for further treatment.  (D.E. 4, pp. 11-12).  According to Plaintiff, the UTMB changed the criteria from an APRI score of 0.4 to 0.7 due to cost measures.  (D.E. 4, p. 11).  The reviewing officer denied Plaintiff relief, noting that his APRI score was 0.5, that his Hepatitis C

condition would continue to be monitored, and that he would be referred for treatment once his APRI score becomes greater than 0.7.  (D.E. 4, p. 12).  Plaintiff's Step 2 grievance, dated February 20, 2016, also was rejected based on the fact his APRI score was not high enough under the Hepatitis C policy to require referral for treatment.  (D.E. 4, pp. 13, 14).

In his Step 1 grievance (Grievance No. 2016201919), dated August 22, 2016, Plaintiff complained that PA Corbett and Dr. Kwarteng had denied him treatment for his Hepatitis C condition.  (D.E. 4, pp. 15-16).   Medical Practice Manager Lawson denied this grievance on September 27, 2016, finding that Plaintiff's APRI score was 0.593 and that the score must be greater than 0.7 for him to be referred for treatment.  (D.E. 4, p. 16).   Medical Practice Manage Lawson also responded to Plaintiff's I-60 request, dated October 3, 2016, by reiterating to Plaintiff that he was ineligible for referral for Hepatitis C treatment.  (D.E. 4, p. 28).  Plaintiff's Step 2 grievance, dated October 6, 2016, was rejected because Plaintiff had "been evaluated by the unit doctor and the findings [revealed that Plaintiff had not met] the criteria for referral to Hep-C clinic."  (D.E. 4, pp. 17, 18).

In his Step 1 grievance (Grievance No. 2017021582), dated November 17, 2016, Plaintiff complained about the inadequate medical care he had received at the McConnell Unit infirmary, including the lack of treatment for his Hepatitis C condition.  (D.E. 4, pp. 23, 24).  Medical Practice Manager Lawson denied this grievance on November 17, 2016, finding in part that he had been notified about not meeting the criteria for referral

for treatment as to his Hepatitis C condition.   (D.E. 4, p. 24).   Plaintiff's Step 2 grievance, dated November 24, 2016, was subsequently denied.  (D.E. 4, pp. 25-26).

### D.  Additional Evidence

Along with his own grievances, Plaintiff has submitted Step 1 and 2 grievances filed by another McConnell Unit inmate, Jeffrey Sharp.  (D.E. 4, pp. 19-22).   Inmate Sharp complained in his Step 1 grievance dated May 26, 2016, that his Hepatitis C condition had been evaluated on February 3, 2016, but that he was denied treatment. (D.E. 4, pp. 19-20).  The reviewing officer denied his Step 1 grievance. (D.E. 4, p. 19).

In his Step 2 grievance, dated August 29, 2016, offender Sharp reiterated his complaints that his Hepatitis C condition was only being monitored and not treated. (D.E. 4, p. 21).   The reviewing officer denied offender Sharp's Step 2 grievance on September 23, 2016 on the basis that the inmate's APRI score was 0.28, which was "below the 0.42 guidelines" in effect.  (D.E. 4, p. 22).

## IV.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.* Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual

issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact.  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

## V.   DISCUSSION

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state . . . ." Const. Amend. XI. This withdrawal of jurisdiction effectively confers immunity from suit.  *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 144 (1993).  The Fifth Circuit has repeatedly held that the Eleventh Amendment bars claims under § 1983 for money damages against TDCJ officials in their official capacities.  *See e.g., Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

In this case, however, Plaintiff sues Defendants in their official capacities for injunctive relief only.   An exception to the Eleventh Amendment bar permits federal courts to "grant[] prospective injunctive relief to prevent a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)).  *See also Cantu Servs., Inc. v. Roberie*, 535 F. App'x 342, 344-45 (5th

Cir. 2013) (recognizing that, in order to avoid an Eleventh Amendment bar of a claim raised against a state official in his official capacity, the complaint must allege an ongoing violation of federal law and seek prospective injunctive relief).

### A. Medical Practice Manager Lawson

Defendants contend in their summary judgment motion that Plaintiff lacks standing to seek injunctive relief against Medical Practice Manager Lawson to redress his injury because she is not a clinician with authority either to refer for medical treatment or actually provide medical treatment.  (D.E. 38, p. 10).  Defendants further contend that Plaintiff's deliberate indifference claims against Medical Practice Manager Lawson should be dismissed because she was not personally involved in Plaintiff's Hepatitis C medical evaluations or treatments.  (D.E. 38, pp. 15-17).

Plaintiff counters that Medical Practice Manager Lawson "invited herself into this suit" by responding to Plaintiff's grievances, which effectively denied Plaintiff needed medical services for his Hepatitis C condition.  (D.E. 41, p. 3).  Plaintiff further contends that CMHC Policy 12.1 authorizes Medical Practice Manager Lawson to render medical advice.  (D.E. 41, pp. 3-4).

To succeed on claims for injunctive relief, a plaintiff must satisfy the following three elements to demonstrate standing: (1) injury in fact; (2) causation; and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  "The redressability element requires that a favorable decision for the plaintiff will likely, not merely speculatively, redress his injuries."  *McCreary v. Richardson*, No. 6:11cv559, 2012 WL 1899591, at *4 (E.D. Tex. May 3, 2012) (citing *Lujan*, 504 U.S. at 561).

The competent summary judgment presented in this case demonstrates that Medical Practice Manager Lawson has no medical education or experience, that her position is administrative in nature, and that she lacks authority to offer medical care or treatment to inmates like Plaintiff.  (D.E. 38-1, pp. 43, 63).  Contrary to Plaintiff's contention, CMHC Policy 12.1 does not provide Defendant with any authority to render medical advice, but instead authorizes Medical Practice Manager Lawson to respond to informal I-60 medical complaints filed by prisoners at the McConnell Unit.  (D.E. 41-2, p. 4).  Because she cannot recommend or provide any specific medical treatment, Medical Practice Manager Lawson lacks the authority, or requisite standing, to effectuate any prospective injunctive relief on behalf of Plaintiff.  *See Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) (explaining that plaintiffs "have no case or controversy" with defendants who have no power to redress the injuries alleged).

Moreover, the uncontroverted summary judgment evidence shows that Medical Practice Manager Lawson was not personally involved in any of the medical decisions related to the treatment, monitoring, or care of Plaintiff's Hepatitis C condition. *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").  Medical Practice Manager Lawson's responses to Plaintiff's informal and formal grievances are not actionable conduct under § 1983.  *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (holding that, because inmates have no constitutionally protected liberty interest in having grievances resolved to their satisfaction, there is no due process violation when prison officials fail to do so); *Bonneville v. Basse*, No. 2:12-CV-0200, 2012 WL 4854721, at *3 (N.D. Tex.

Sep. 21, 2012) (concluding that a prison official's denial of prisoner's Step 1 grievances fails to state a due process claim because there is no "federally-protected right to have his grievances investigated and resolved").

Accordingly, the undersigned respectively recommends that Plaintiff's deliberate indifference claims against Medical Practice Manager Lawson in her official capacity be dismissed with prejudice.

### B.  Dr. Kwarteng and PA Corbett

Defendants argue that Plaintiff's deliberate indifference claims raised against Dr. Kwarteng and PA Corbett are barred by the Eleventh Amendment because: (1) Plaintiff cannot demonstrate actual success on the merits of his Eighth Amendment claims; and (2) prospective injunctive relief in the form of medical treatment is inappropriate.  (D.E. 38, p. 18-20).   While not specifically addressing Defendants' Eleventh Amendment argument, Plaintiff generally asserts that genuine issues of material fact exist as to his claims of deliberate indifference.  (D.E. 41, p. 4).

#### *(1)  Eighth Amendment Claims*

As part of their argument regarding the Eleventh Amendment bar, Defendants contend no evidence has been presented to show that: (1) Dr. Kwarteng or PA Corbett acted with deliberate indifference; and (2) Plaintiff is entitled to any form of injunctive relief.  (D.E. 38, pp. 20-24).   The undersigned, therefore, will analyze the underlying merits of Plaintiff's Eighth Amendment claims before turning to the Eleventh Amendment issue.

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation omitted). A prison official violates this duty when by act or omission he is deliberately indifferent to prison conditions which pose a substantial risk of serious harm. *Id.* at 834.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that prison officials acted with deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Deliberate indifference requires that prison officials both be aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act. *Farmer*, 511 U.S. at 837.

In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). However, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012).

Negligent medical care does not constitute a valid § 1983 claim. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). *See also Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993), *abrogated on other grounds by Arvie v. Broussard*, 42 F.3d 249 (5th Cir. 1994) (per curiam) ("It is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim"). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). "Deliberate indifference is an "extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

An inmate may obtain injunctive relief on an Eighth Amendment claim "if he shows that it is necessary in order 'to prevent a substantial risk of serious injury from ripening into actual harm.'" *Atkinson v. Johnson*, 74 F. App'x 365, 367 (5th Cir. 2003) (quoting *Farmer*, 511 U.S. at 845). The inmate, in order to avoid summary judgment against him, "must come forward with evidence . . . that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so." *Farmer*, 511 U.S. at 845-46. "[T]o establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Id.* at 846.

In this case, the competent summary judgment evidence establishes that: (1) Plaintiff was diagnosed with Hepatitis C following a visit to the infirmary on February 2, 2015, where Dr. Kwarteng was the treating physician; (2) after Plaintiff was diagnosed

with Hepatitis C in February, 2015, lab work revealed Plaintiff's APRI score to be 0.5;
(3) on August 11, 2015, PA Corbett noted that Plaintiff's APRI of 0.5 met "the criteria
for referral for treatment" and referred Plaintiff for scheduling at the CCC within 30 days;
(4) PA Corbett's referral never occurred because the criteria for referral was changed in
2015 to require an APRI score of 0.7; (5) on December 11, 2015, PA Corbett determined
that Plaintiff's APRI score of 0.5 did not meet the criteria for further treatment of his
Hepatitis C condition; (6) On January 13, 2016 Plaintiff's APRI score had increased to
0.593; (7) Dr. Kwarteng informed Plaintiff on August 22, 2016 that he did not meet the
clinical criteria for referral for treatment because his APRI score was still less than 0.7;
and (8) on December 20, 2016, Dr. Kwarteng ordered Plaintiff to undergo additional lab
work in November, 2017.  (D.E. 38.1, pp. 4-9, 14, 16, 19, 23, 26, 29, 34-38, 42-43, 74).

It is undisputed that Hepatitis C is a serious health condition, which can progress
into liver cancer if left untreated.  (D.E. 38-1, p. 48).  Dr. Kwarteng acknowledged that
there are several medications on the market available to treat Hepatitis C and that the
UTMB uses either Harvoni or Epclusa to treat offenders with Hepatitis C.  (D.E. 38-1, p.
70).  Such treatment regimens, however, are generally quite costly.  *See Gonzales v.
Corizon Health Care Providers*, No. CV 15-00890, 2017 WL 3605366, *2 n.1 (D. N.
Mex. Jan. 18, 2017).

The competent summary judgment evidence shows that at all relevant times: (1)
Dr. Kwarteng and PA Corbett monitored Plaintiff's Hepatitis C condition and
occasionally ordered lab work for Plaintiff; and (2) Plaintiff did not receive a referral for
further treatment for his Hepatitis C condition because his scores of 0.5 and then 0.593

fell below the Hepatitis C Policy threshold of 0.7. Fact issues exist, however, as to whether either Dr. Kwarteng or PA Corbett was required to refer Plaintiff for further treatment during the time Plaintiff was initially diagnosed with Hepatitis C in February, 2015, through at least April, 2016.

Plaintiff testified at the *Spears* hearing that the Hepatitis C policy in place in February, 2015, required an APRI score over 0.42 for the patient to be eligible for referral for treatment. In contrast, the Hepatitis C Policy submitted by Defendants specifically provides that inmates with APRI scores less than or equal to 0.7 generally do not require evaluation for proper treatment unless they presented with additional evidence of a failing liver or co-morbid conditions. (D.E. 38-1, p. 49). However, the first page of this policy indicated that it became effective on effective April 14, 2016, replacing the old policy dated February 12, 2015. (D.E. 38-1, p. 46).

Defendants have neither indicated nor submitted any evidence to confirm whether, from February, 2015 through April 14, 2016, the minimum threshold APRI score under the policy in effect was 0.7 for an inmate to be eligible for further treatment. On August 11, 2015, during this time frame, PA Corbett initially determined that Plaintiff's APRI score of 0.5 qualified him for referral for treatment. According to PA Corbett, such referral never occurred because the APRI threshold score had been raised in 2015 to 0.7. Plaintiff has submitted grievances filed by offender Sharp, reflecting that his Hepatitis C condition was evaluated on February 3, 2016, but that he was denied referral for treatment because his APRI score was "below the 0.42 guidelines" in effect at that time. (D.E. 4, p. 22). This denial of offender Sharp's grievance in 2016 contradicts PA

Corbett's statement that the APRI threshold score for referral was raised from 0.42 to 0.7 sometime in 2015.

Based on the evidence presented before the Court, a jury could find that Dr. Kwarteng and PA Corbett intentionally ignored the Hepatitis C guidelines in effect from the time he was diagnosed in February, 2015, through early 2016, which may have only required an APRI threshold score of 0.42 for referral for treatment. Despite the fact that Plaintiff's APRI score exceeded 0.42 at all relevant times, it is undisputed that Plaintiff was never referred for possible treatment for his Hepatitis C condition. The competent summary judgment evidence further indicates that the threshold APRI score requiring referral for treatment may be a "moving target" depending on whether a particular inmate exceeds a certain score. Thus, when and if Plaintiff's threshold APRI score exceeds 0.7, it is uncertain whether Defendants Kwarteng or PA Corbett would continue to deny Plaintiff a referral based on additional modifications to the Hepatitis C Policy requiring an even greater APRI score.

In sum, genuine issues of material fact exist as to whether Dr. Kwarteng and PA Corbett were aware of a significant health risk to Plaintiff and then failed to act on this serious risk by referring Plaintiff for possible Hepatitis C treatment under the policy in place so that his serious health issue could be adequately addressed. Accordingly, Dr. Kwarteng and PA Corbett are not entitled to summary judgment on the issue of whether they acted with deliberate indifference to Plaintiff serious medical needs in violation of the Eighth Amendment.

### *(2) The Eleventh Amendment Bar*

The undersigned now turns to the issue of whether Plaintiff's deliberate indifference claims are barred by the Eleventh Amendment. "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotations and modifications omitted). Thus, the *Ex parte Young* exception applies when (1) a plaintiff has pled a valid claim for a violation of federal law against a state official responsible for enforcing the law at issue in that person's official capacity; (2) the claim seeks only prospective injunctive relief; and (3) the claim seeks to address a "continuing violation of federal law." *Walker v. Livingston*, 381 F. App'x 477, 478-79 (5th Cir. 2010) (per curiam) (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996)).

As discussed above, fact issues exist as to whether Dr. Kwarteng and PA Corbett acted with deliberate indifference to Plaintiff's serious medical needs. Plaintiff's allegations and the competent summary judgment evidence further indicate that any possible violations of Plaintiff's Eighth Amendment rights are ongoing as Plaintiff has yet to obtain a referral from either Dr. Kwarteng or PA Corbett for possible treatment for his Hepatitis C condition.

Plaintiff seeks prospective injunctive relief in the form of either referral for treatment or actual treatment for his Hepatitis C condition. Such relief sought by Plaintiff essentially seeks to address the continuing violations of his Eighth Amendment rights.

Because the *Ex parte Young* exception applies in this case, Defendants' summary judgment motion should be denied on the issue of whether Plaintiff's deliberate indifference claims against Dr. Kwarteng and PA Corbett are barred by the Eleventh Amendment.

### (3) Certain Injunctive Relief

While rejecting the application of an Eleventh Amendment bar, the competent summary judgment evidence demonstrates that Plaintiff is not entitled to a portion of the prospective injunctive relief sought against Dr. Kwarteng and PA Corbett. This evidence establishes that these defendants only retain authority to provide Hepatitis C inmates with monitoring, testing, and referrals for possible treatment. (D.E. 38-1, pp. 69, 74-75). Thus, they have no authority to make any specific treatment decisions or provide specific medical care. Dr. Kwarteng and PA Corbett lack the authority, or requisite standing, to effectuate prospective injunctive relief on behalf of Plaintiff in the form of providing treatment or treatment options to Plaintiff. *See Okpalobi* 244 F.3d at 426-27.

The only prospective injunctive relief that Dr. Kwarteng and PA Corbett can provide Plaintiff is a referral for possible treatment. Accordingly, the undersigned recommends that Defendants' summary judgment motion be granted against Dr. Kwarteng and PA Corbett to the extent that Plaintiff cannot obtain injunctive relief in the form of receiving treatment or treatment options from these defendants.

## VI.   RECOMMENDATION.

Based on the foregoing, the undersigned respectfully recommends that: (1) Defendants' Motion for Summary Judgment (D.E. 38) be **GRANTED in part** to the

extent that: (a) Plaintiff's deliberate indifference claims against **Medical Practice Manager Lawson** in her official capacity be **DISMISSED with prejudice**; and (b) Plaintiff's claims  seeking prospective injunctive relief in the form of receiving treatment or treatment options be **DISMISSED with prejudice**; and (2) Defendants' Motion for Summary Judgment (D.E. 38) be **DENIED in part** in all other respects.   Plaintiff, therefore, should be allowed to proceed to trial against Dr. Kwarteng and PA Corbett claims in their official capacities on his deliberate indifference seeking prospective injunctive relief in the form of receiving a referral for treatment.

Respectfully submitted this 29th day of December, 2017.

Jason B. Libby
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).