IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALEX ROY; aka ALEX JOSEPH ROY, JR.; aka A.J. ROY; aka AL ROY, § § § | | |
| Plaintiff, § | | |
| VS. § | CIVIL NO. 2:17-CV-9 | |
| § | | |
| TANYA LAWSON, *et al*, § § | | |
| Defendants. § | | |

# ORDER

## I. Introduction

The Court has before it Defendants' Motion for Summary Judgment (Dkt. No. 38), the Memorandum and Recommendation ("M&R") of the Magistrate Judge to whom this case is referred (Dkt. No. 47), the parties' objections to the M&R (Dkt. Nos. 50, 51), and Plaintiff's response to Defendants' objections (Dkt. No. 53).

Plaintiff Alex Roy brings this § 1983 civil rights action against prison officials, arguing that they were deliberately indifferent to his serious medical needs by not treating him or referring him for treatment for his Hepatitis C condition. The Magistrate Judge recommends that the Court dismiss Plaintiff's claim for injunctive relief in the form of receiving treatment, and that the Court retain his claims for injunctive relief in the form of a referral for treatment. For the reasons below, the Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the M&R and **DISMISSES WITH PREJUDICE** all of Plaintiff's claims against all defendants.

## II. Procedural History

Plaintiff is currently serving a ninety-five year sentence for aggravated robbery at the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and is housed at the McConnell Unit in Beeville, Texas. On

January 9, 2017, Plaintiff filed his § 1983 claim for injunctive relief against the following McConnell Unit officials in their official capacities: (1) Tanya Lawson ("Lawson"), Medical Practice Manager; (2) Dr. Isaac Kwarteng ("Kwarteng"), Medical Director; and (3) Susanna Corbett ("Corbett"), Physician Assistant ("PA"). Dkt. No. 1. Plaintiff specifically alleges that Defendants were deliberately indifferent to his serious medical needs by not treating him or referring him for treatment for his Hepatitis C condition. Dkt. No. 4.

On February 21, 2017, the Magistrate Judge to whom this case was referred conducted a *Spears*[1] hearing. After the hearing, the Magistrate Judge ordered service of Plaintiff's complaint and memorandum in support on Defendants. Dkt. No. 12. On April 6, 2017, Defendants filed their answer. Dkt. No. 13). On August 4, 2017, Defendants filed their instant Motion for Summary Judgment. Dkt. No. 38. Plaintiff responded to the motion on August 21, 2017. Dkt. No. 41.

On December 29, 2017, the Magistrate Judge issued an M&R recommending that the Court grant in part and deny in part Defendant's motion for summary judgment. Dkt. No. 47. Both parties objected to the M&R, and Plaintiff also filed a response to Defendants' objections. Dkt. Nos. 50, 51, 53. The Court now considers Defendant's summary-judgment motion.

### III. Summary-Judgment Evidence

Defendants attach the following summary-judgment evidence to their motion:

- Relevant Portions of TDCJ's Health Services Medical Records for Alex Roy (Dkt. No. 38-1 at 2-40);
- Affidavit of Dr. Stephen Bowers (Dkt. No. 38-1 at 41-44);
- Correctional Managed Health Care ("CMHC") Policy B-14.13.3 (Dkt. No. 38-1 at 45-57);
- Relevant Portions of Plaintiff's Grievances (Dkt. No. 38-1 at 58-60);

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

- Relevant Portions of Lawson's Responses to Plaintiff's Interrogatories (Dkt. No. 38-1 at 61-11);
- Relevant Portions of Kwerteng's Responses to Plaintiff's Interrogatories (Dkt. No. 38-1 at 67-71);
- Relevant Portions of Corbett's Responses to Plaintiff's Interrogatories (Dkt. No. 38-1 at 72-77).

Plaintiff has offered the following summary-judgment evidence:

- Public Verification/Physician Profile of Defendant Bowers (Dkt. No. 41-1 at 9-10);
- CMHC Policy Manual—Table of Contents (Dkt. No. 41-2 at 1-3);
- September 12, 2016, Letter Regarding CMHC Policy 12.1 (Dkt. No. 41-2 at 4).

As the Magistrate Judge noted, "Plaintiff's verified complaint, attachments thereto, and testimony at the *Spears* hearing also serve as competent summary judgment evidence." Dkt. No. 47 at 3-4 (citing *Garrett v. Davis*, Case No. 2:14-cv-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017). But although these are part of the record, they do not constitute competent summary-judgment evidence wholesale. Rather, the verified complaint and *Spears*-hearing testimony, like other parts of the record, must satisfy Federal Rule of Civil Procedure 56(c) in order to be considered at summary judgment. *See Mengele v. AT&T Servs. Inc.*, 2017 WL 3835871, at *3 (N.D. Tex. Aug. 9, 2017) ("[T]he verified complaint and sworn interrogatory answers of the *pro se* litigant can be considered as summary judgment evidence *to the extent that such pleadings comport with the requirements of current Rule 56(c).*") (emphasis added) (citations omitted); *see also* M&R, Dkt. No. 47 at 10. Accordingly, the Court will not consider parts of Plaintiff's verified complaint or *Spears*-hearing testimony that are not made on personal knowledge or that would be inadmissible in evidence. *See* FED. R. CIV. P. 56(c)(4). This is particularly important to the extent that the Court is considering Plaintiff's verified complaint

and *Spears*-hearing testimony *sua sponte*, without offering the parties an opportunity to contest their admission as competent summary-judgment evidence.

Certain portions of Plaintiff's testimony must thus be excluded from the Court's consideration at this stage. For example, although Plaintiff is competent to testify on matters such as his interactions with Defendants and the treatment (or lack of it) that he received, his testimony regarding the price or effectiveness of Hepatitis C medications is neither based on personal knowledge nor corroborated by other evidence and his testimony regarding TDCJ's reasons for not referring him for treatment is speculative. The Court therefore declines to adopt the Magistrate Judge's inclusion of Plaintiff's verified complaint and *Spears*-hearing testimony on those matters, including the treatment-referral process and the effectiveness of Interferon as a treatment for Hepatitis C.[2] *See* Dkt. No. 47 at 4.

The Court adopts the Magistrate Judge's characterization of the remaining competent summary-judgment evidence:

### A. Plaintiff's Verified Complaint and *Spears Hearing Testimony*

> Plaintiff was diagnosed with Hepatitis C on or about February 12, 2015. Plaintiff was fifty-one years old at the time of the diagnosis. Plaintiff first heard about the diagnosis from PA Corbett, who informed Plaintiff about receiving chronic care treatment for his Hepatitis C condition.
> 
> PA Corbett performed blood work on Plaintiff which included a determination of his AST/Platelet Ration Index (APRI) as 0.5 in February, 2015. Plaintiff testified that, in accordance with the policy in effect in February, 2015, an APRI over 0.42 meant the patient was eligible for referral for treatment. . . . The TDCJ criteria regarding Hepatitis C was changed, effective April 14, 2016, raising the APRI threshold score for referral for treatment to 0.7. This change occurred after Plaintiff's grievance challenging the denial of referral for treatment was answered. Plaintiff's latest APRI score is 0.593. Nevertheless, Plaintiff continues to be denied treatment for his serious Hepatitis C condition, which could lead to liver cancer.

---

[2] The Court notes that Plaintiff has objected to the inclusion of this testimony in the summary-judgment record. *See* Dkt. No. 51 at 7 ("At no time did Plaintiff reference Interferon as a treatment for the Hepatitis C Virus Infection he has.").

## B. Relevant Medical Care Evidence

The Hepatitis C Policy is set forth in the CMHC Infection Control Manual as Policy B-14.13-3 (Hepatitis C Policy). (D.E. 38-1, pp. 46-57). The Hepatitis C Policy provides "guidance regarding the modes of transmission, screening, prevention, initial evaluation, clinical management, evaluation during treatment, housing, and work assignments of offenders with Hepatitis C (HCV)." (D.E. 38-1, p. 46). This policy states on the first page that it became effective April 14, 2016, replacing the old policy dated February 12, 2015. (D.E. 38-1, p. 46).

Dr. Stevens Bowers, licensed by the Texas Medical Board and the current Legal Coordinator for the University of Texas Medical Branch Correctional Managed Care (UTMB/CMC), testified in his affidavit:

> UTMB-CMC policy requires that patients with a Hepatitis C Infection must be enrolled in the Chronic Care Clinic and seen at least once every 12 months. Patients identified as currently Hepatitis C infected and enrolled in the Chronic Care Clinic may be discharged from the Chronic Care Clinic, if baseline transaminases and liver function tests are all within normal limits.
>
> An [APRI] score is assigned to Hepatitis patients using testing. This score provides indication for signs or symptoms of liver disease as a result of Hepatitis C. the APRI score is used to determine if the offender patient is a candidate for referral to a designated provider or clinic to be evaluated for possible treatment of Hepatitis C. Patients with APR scores less than or equal to 0.7 do not require evaluation for possible treatment.

(D.E. 38-1, p.42). The Hepatitis C Policy specifically provides that "patients with APRI scores [less than or equal to] 0.7 generally do not require evaluation for possible treatment," but that the provider may consider the inmate-candidate for treatment based on other factors such as the history of the infection, clinical or laboratory evidence of a failing liver, or the presence of co-morbid conditions. (D.E. 38-1, p. 49). The provider retains discretion in his clinical judgment whether a patient with an APRI lower than 0.7 should be referred for possible treatment. (D.E. 38-1, p. 49).

On February 2, 2015, following a sick call request, Plaintiff was examined in the medical department for complaints of diarrhea and

stomach cramps. (D.E. 38-1, p. 4). Dr. Kwarteng, who was Plaintiff's treating physician, prescribed certain medications for Plaintiff. (D.E. 38-1, pp. 5-6). Dr. Kwarteng performed a physical examination on Plaintiff on February 11, 2015. (D.E. 38-1, p. 7). Because Plaintiff tested positive for Hepatitis C, Dr. Kwarteng ordered a series of labs, including a request to obtain Plaintiff's APRI score. (D.E. 38-1, pp. 7-9). Plaintiff's APRI score in February, 2015 was 0.5. (D.E. 38-1, p. 42). On February 11, 2015, Licensed Vocational Nurse (LVN) Michelle McGee notified the Office of Public Health about Plaintiff's Hepatitis C diagnosis. (D.E. 38-1, p. 3).

On August 11, 2015, Plaintiff was treated by PA Corbett. (D.E. 38-1, pp. 10-14). After noting Plaintiff's APRI score of 0.5 met "the criteria for referral for treatment," PA Corbett expressly directed Plaintiff to be scheduled at the Hepatitis Chronic Care Clinic (CCC) within 30 days. (D.E. 38-1, pp. 14, 16, 19). PA Corbett stated in her response to Plaintiff's Interrogatories, however, that the Hepatitis C referral criteria was updated in 2015 to require an APRI score of 0.7 and that, therefore, her referral recommendation on August 11, 2015 never occurred. (D.E. 38-1, p. 74).

On December 11, 2015, PA Corbett completed an Individual Treatment Plain on behalf of Plaintiff. (D.E. 38-1, pp. 22-29). This plan noted Plaintiff's APRI score at 0.5. (D.E. 38-1, p. 23). PA Corbett determined that Plaintiff's Hepatitis C did not meet the criteria for further treatment at that time and directed Plaintiff to be scheduled at the CCC for Hepatitis C concerns in twelve months. (D.E. 38-1, pp. 26, 29).

On August 19, 2016, PA Corbett examined Plaintiff and ordered lab work for Plaintiff to be taken before his next CCC appointment. (D.E. 38-1, pp. 31-32, 43). The lab work revealed Plaintiff's Hepatitis C condition to be stable and not requiring any treatment. (D.E. 38-1, pp. 34, 43). Dr. Kwarteng examined Plaintiff on August 22, 2016, at which time Plaintiff expressed his concerns about his Hepatitis C treatment plan. (D.E. 38-1, pp. 33-34, 43). Dr. Kwarteng informed Plaintiff that he did not meet the clinical criteria for referral for treatment because his APRI score was less than 0.7. (D.E. 38-1, pp. 34, 42-43).

Plaintiff's APRI score was updated on January 13, 2016 to be 0.593. (D.E. 38-1, p. 35). On December 20, 2016, Dr. Kwarteng examined Plaintiff and prepared an Individualized Treatment Plan. (D.E. 38-1, pp. 35-40). Plaintiff's lab work was documented in this plan, including his APRI score of 0.593. (D.E. 38-1, pp. 35-36). Dr. Kwarteng

ordered lab work for Plaintiff to be performed again in November, 2017. (D.E. 38-1, p. 38).

### C. Plaintiff's Grievances

In his Step 1 grievance (Grievance No. 2016058284), dated December 13, 2015, Plaintiff complained about not satisfying the Hepatitis C criteria for referral for further treatment. (D.E. 4, pp. 11-12). According to Plaintiff, the UTMB changed the criteria from an APRI score of 0.4 to 0.7 due to cost measures. (D.E. 4, p. 11). The reviewing officer denied Plaintiff relief, noting that his APRI score was 0.5, that his Hepatitis C condition would continue to be monitored, and that he would be referred for treatment once his APRI score becomes greater than 0.7. (D.E. 4, p. 12). Plaintiff's Step 2 grievance, dated February 20, 2016, also was rejected based on the fact his APRI score was not high enough under the Hepatitis C policy to require referral for treatment. (D.E. 4, pp. 13, 14).

In his Step 1 grievance (Grievance No. 2016201919), dated August 22, 2016, Plaintiff complained that PA Corbett and Dr. Kwarteng had denied him treatment for his Hepatitis C condition. (D.E. 4, pp. 15-16). Medical Practice Manager Lawson denied this grievance on September 27, 2016, finding that Plaintiff's APRI score was 0.593 and that the score must be greater than 0.7 for him to be referred for treatment. (D.E. 4, p. 16). Medical Practice Manage[r] Lawson also responded to Plaintiff's I-60 request, dated October 3, 2016, by reiterating to Plaintiff that he was ineligible for referral for Hepatitis C treatment. (D.E. 4, p. 28). Plaintiff's Step 2 grievance, dated October 6, 2016, was rejected because Plaintiff had "been evaluated by the unit doctor and the findings [revealed that Plaintiff had not met] the criteria for referral to Hep-C clinic." (D.E. 4, pp. 17, 18).

In his Step 1 grievance (Grievance No. 2017021582), dated November 17, 2016, Plaintiff complained about the inadequate medical care he had received at the McConnell Unit infirmary, including the lack of treatment for this Hepatitis C condition. (D.E. 4, pp. 23, 24). Medical Practice Manager Lawson denied this Grievance on November 17, 2016, finding in part that he had been notified about not meeting the criteria for referral for treatment as to his Hepatitis C condition. (D.E. 4, p. 24). Plaintiff's Step 2 grievance, dated November 24, 2016, was subsequently denied. (D.E. 4, pp. 25-26).

### D. Additional Evidence

Along with his own grievances, Plaintiff has submitted Step 1 and 2 grievances filed by another McConnell Unit inmate, Jeffrey Sharp. (D.E. 4, pp. 19-22). Inmate Sharp complained in his Step 1 grievance dated May 26, 2016, that his Hepatitis C condition had been evaluated on February 3, 2016, but that he was denied treatment. (D.E. 4, pp. 19-20). The reviewing officer denied his Step 1 grievance. (D.E. 4, p. 19).

In his Step 2 grievance, dated August 29, 2016, offender Sharp reiterated his complaints that his Hepatitis C condition was only being monitored and not treated. (D.E. 4, p. 21). The reviewing officer denied offender Sharp's Step 2 grievance on September 23, 2016 on the basis that the inmate's APRI score was 0.28, which was "below the 0.42 guidelines" in effect. (D.E. 4, p. 22).

Dkt. No. 47 at 4-9. The major fact disputes in this case are thus whether the CMHC policy between February 2015 and April 2016 set a 0.42 or 0.7 threshold for referral for further Hepatitis C treatment and whether Kwarteng and Corbett followed that policy.

## IV. Legal Standard

As the Magistrate Judge describes:

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. [FED. R. CIV. P. 56(a)]. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.* . . .

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts

to the nonmoving party to come forward with specific facts showing that a genuine issue for trail does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. [Fed. R. Civ. P. 56(c)]; *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

Dkt. No. 47 at 9-11.

## V. Discussion

At the outset, the Court adopts the Magistrate Judge's M&R as to Plaintiff's claims against Lawson and dismisses his claim against her. The Court therefore turns to Plaintiff's claims against Kwerteng and Corbett (hereinafter "Defendants").

Defendants argue that Plaintiff's deliberate indifference claims are barred by the Eleventh Amendment because Plaintiff cannot show success on the merits of his deliberate-indifference claims and because prospective injunctive relief in the form of actual medical treatment is inappropriate. Dkt. No. 38 at 18-20. Plaintiff argues that genuine issues of material fact exist as to his deliberate-indifference claims. Dkt. No. 41 at 4.

The Magistrate Judge concluded that "genuine issues of material fact exist as to whether Dr. Kwarteng and PA Corbett were aware of a significant health risk to Plaintiff and then failed to act on this serious risk.". Dkt. No. 47 at 19. He found that the fact issues indicated "that any possible violations of Plaintiff's Eighth Amendment rights are ongoing as Plaintiff has yet to obtain a referral . . . for possible treatment." Dkt. No. 47 at 20. Although the Magistrate Judge concluded

that Plaintiff could not seek actual treatment, he recommends that the case continue to trial on whether Plaintiff is entitled to a referral for treatment. *Id.* at 21-22.

This Court disagrees that this lawsuit should proceed for two reasons. First, Plaintiff has not presented a genuine issue as to his Eighth-Amendment deliberate-indifference claims. Second, his action is barred by the Eleventh Amendment. The Court addresses each issue below.

A.     **Plaintiff's Deliberate-Indifference Claim**

"For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Smith v. Brenoettsy*, 158 F.3d 908, 911-912 (5th Cir. 1998). This standard is extremely high, requiring a plaintiff to show that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

The Magistrate Judge concluded that "a jury could find that Dr. Kwarteng and PA Corbett intentionally ignored the Hepatitis C guidelines in effect from the time he was diagnosed in February, 2015, through early 2016." Dkt. No. 47 at 19. But the issue before the Court is not merely whether Defendants followed the CMHC Hepatitis C policy, but rather whether they ultimately were deliberately indifferent to a serious risk of harm to Plaintiff. Mere non-adherence to a policy does not violate the Eighth Amendment, just as adherence to a policy does not necessarily preclude a finding of deliberate indifference. "[U]nsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012).

Defendants have offered evidence that they did not wantonly disregard Plaintiff's Hepatitis C violation so as to violate the Eighth Amendment. For example, Plaintiff's records show that Defendants regularly tested for and monitored his Hepatitis C condition. Plaintiff, in sum, argues that Defendants should have referred him for further treatment. This amounts to little more than a disagreement over what constitutes adequate testing and treatment for his condition. *See Whiting v. Kelly*, 255 Fed.Appx. 896, 899 (5th Cir. 2007) ("Although [plaintiffs] clearly believe that they should undergo additional testing and drug therapies, such disagreement does not give rise to a constitutional claim.") (citations omitted). Plaintiff thus has not offered competent evidence that Defendants were deliberately indifferent to a serious medical need, and therefore he does not present a genuine issue as to his Eighth-Amendment claims.

Although Plaintiff's evidence may call into question whether Defendants adhered to the 2015 CMHC Hepatitis C policy, it does not raise a genuine issue as to whether the possible failure to adhere to the policy constituted an Eighth-Amendment violation. *See McCarty v. Zapata County*, 243 Fed.Appx. 792, 794 (5th Cir. 2007) ("[Plaintiff's] allegations established, at best, that the defendants failed to follow the course of treatment that was recommended by the physician who saw him . . . . This is insufficient to establish deliberate indifference.") (citing *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). Plaintiff's summary-judgment evidence does not speak to the central issue of whether Defendants were deliberately indifferent to Plaintiff's serious medical condition. Plaintiff argues that Defendants "have [deliberately] ignored Plaintiff's plight with Hepatitis C Virus Infection in their respective official capacity due to the cost of the [medications,]" but he has offered no competent summary-judgment evidence supporting that assertion. Dkt. No. 53 at 3. Defendants are therefore entitled to summary judgment on Plaintiff's Eighth-Amendment claim.

### B. Eleventh-Amendment Immunity

Even if Plaintiff had offered evidence that Defendants were deliberately indifferent when they tested and monitored him in 2015 and early 2016, he has not offered competent evidence to show an ongoing violation that would entitle him to prospective injunctive relief. As the Magistrate Judge identified, the Eleventh Amendment bars claims against state officials for injunctive relief unless the plaintiff seeks only prospective injunctive relief and "seeks to address a 'continuing violation of federal law.'" Dkt. No. 47 at 20 (quoting *Walker v. Livingston*, 381 F.Appx 477, 478-79 (5th Cir. 2010) (per curiam) (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996))).

Regardless of any dispute over whether the CMHC Hepatitis C policy in 2015 and early 2016 set a 0.42 or 0.7 APRI threshold for a possible treatment referral, the uncontroverted summary-judgment evidence establishes that the *current* APRI threshold is 0.7. *See* CMHC Policy, Dkt. No. 38-1 at 49 (setting a 0.7 APRI threshold as of April 14, 2016); Bowers Aff., Dkt. No. 38-1 at 42. Plaintiff has offered no competent evidence to show that the current 0.7 APRI threshold violates the Eighth Amendment. His claims are therefore barred by the Eleventh Amendment and his case must be dismissed.

In sum, the Court has not been presented with competent summary-judgment evidence supporting Plaintiff's claims that Defendants' past and present practices toward Plaintiff and his Hepatitis C condition constitute deliberate indifference to a serious medical need. There is therefore no genuine issue of material fact, and summary judgment in favor of Defendants is appropriate.

### VI. Conclusion

Accordingly, this Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the Magistrate Judge's December 29, 2017. M&R (Dkt. No. 47). The Court **GRANTS** Defendants' Motion for Summary Judgment (Dkt. No. 38) and **DISMISSES WITH PREJUDICE** Plaintiff's claims against all defendants. The

Court will separately enter Final Judgment in accordance with Federal Rule of Civil Procedure 58.

SIGNED this 26th day of February, 2018.

_____
Hilda Tagle
Senior United States District Judge